No. 22-4020

_____

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

_____

The United States of America,

*Respondent-Appellee*

v.

Yanjun Xu,

*Defendant-Appellant*

_____

On Appeal from the United States District Court
for the Southern District of Ohio
Criminal Case No. 1:18-cr-00043-1
The Honorable Timothy S. Black, U.S. District Judge

_____

**APPELLANT'S REPLY BRIEF**

Counsel listed on the following page

Justine A. Harris (2841955)
Katie Renzler (5516414)
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, NY 10004
Phone: (212) 202-2600
jharris@shertremonte.com
krenzler@shertremonte.com

*Counsel for Defendant-Appellant Yanjun Xu*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................iv

PRELIMINARY STATEMENT ...........................................................................1

ARGUMENT ........................................................................................................3

I.    The Conspiracy Counts Were Duplicitous and the Corresponding
      Admission of Evidence Unrelated to the Theft of Trade Secrets Constituted
      Error ..........................................................................................................3

II.   Xu Preserved His Rule 704(b) Objection to Olson's Testimony and the
      District Court's Admission of the Evidence Warrants Reversal..................10

      A.    The Abuse of Discretion Standard Governs This Court's Review of
            the District Court's Decisions Regarding Olson's Testimony...........10

      B.    The District Court Abused Its Discretion by Admitting Olson's
            Testimony, Causing More Than Harmless Error to Xu ....................13

III.  The District Court Imposed a Procedurally and Substantively
      Unreasonable Sentence on Xu ....................................................................20

      A.    The District Court's Intended Loss Calculation Was Unreasonable...20

      B.    The Sentence Was Substantively Unreasonable .................................26

CONCLUSION....................................................................................................27

CERTIFICATE OF COMPLIANCE....................................................................28

CERTIFICATE OF SERVICE ............................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Easley v. Univ. of Mich. Bd. of Regents*,
  853 F.2d 1351 (6th Cir. 1988) .................................................................9

*Kendel v. Local 17-A United Food & Commercial Workers*,
  512 F. App'x 472 (6th Cir. 2013) ................................................. 19, 20

*Pure Oil Co. v. Superior Oil & Tire Co.*,
  317 F.2d 333 (6th Cir. 1963) .................................................................9

*Stryker Emp't Co., LLC v. Abbas*,
  60 F.4th 372 (6th Cir. 2023) ...............................................................11

*United States v. Adams*,
  722 F.3d 788 (6th Cir. 2013) ..............................................................11

*United States v. Alford*,
  No. 3:21-cr-00052-MCR, 2022 WL 3577373 (N.D. Fla. Aug. 20, 2022) ..........21

*United States v. Banks*,
  55 F.4th 246 (3d Cir. 2022) ................................................................21

*United States v. Collins*,
  799 F.3d 554 (6th Cir. 2015) ..............................................................11

*United States v. Fleming*,
  128 F.3d 285 (6th Cir. 1997) ..............................................................25

*United States v. Free*,
  839 F.3d 308 (3d Cir. 2016) ...............................................................22

*United States v. Harris*,
  393 F. App'x 314 (6th Cir. 2010) ......................................................17

*United States v. Huntington Nat'l Bank*,
  574 F.3d 329 (6th Cir. 2009) ..............................................................11

*United States v. Iossifov*,
   45 F.4th 899 (6th Cir. 2022) ...............................................................6, 8

*United States v. Isler*,
   983 F.3d 335 (8th Cir. 2020) ...................................................................22

*United States v. Kakos*,
   483 F.3d 441 (6th Cir. 2007) .................................................................5, 9

*United States v. Kelley*,
   461 F.3d 817 (6th Cir. 2006) .....................................................................4

*United States v. Kennert*,
   No. 22-1998, 2023 WL 4977456 (6th Cir. Aug. 3, 2023) ....................20

*United States v. Manatau*,
   647 F.3d 1048 (10th Cir. 2011) ..................................................... 21, 22

*United States v. McBride*,
   362 F.3d 360 (6th Cir. 2004) ...................................................................24

*United States v. Miner*,
   774 F.3d 336 (6th Cir. 2014) ...................................................................17

*United States v. Murphy*,
   815 F. App'x 918 (6th Cir. 2020) ............................................................24

*United States v. Patel*,
   Case No. 19-CR-80181-RAR, 2023 WL 5453747 (S.D. Fla. Aug. 23, 2023)....21

*United States v. Pettigrew*,
   77 F.3d 1500 (5th Cir. 1996) ........................................................ 12, 13

*United States v. Shaffer*,
   781 F. App'x 404 (6th Cir. 2019) ............................................................19

*United States v. Smith*,
   79 F.4th 790 (6th Cir. Aug. 23, 2023) ...................................................21

*United States v. Spriggs*,
   102 F.3d 1245 (D.D.C. 1996) .......................................................... 12, 13

*United States v. Warshak*,
   631 F.3d 266 (6th Cir. 2010) ...............................................................17

*United States v. Wheeler*,
   No. 5:22-CR-38-FL-1, 2023 WL 4408939 (E.D.N.C. July 6, 2023) .................21

*United States v. Yihao Pu*,
   814 F.3d 818 (7th Cir. 2016) ...............................................................22

*United States v. You*,
   74 F.4th 378 (6th Cir. 2022) ........................................... 2, 12, 20, 23

*United States v. Yu Xue*,
   Crim. Action No. 16-22, 2020 WL 5645765 (E.D. Pa. Sept. 22, 2020)....... 21, 22

**Statutes**

18 U.S.C. § 1831 .............................................................. 13, 16

18 U.S.C. § 1832 .............................................................. 13, 16

18 U.S.C. § 3553(a)(6) ...............................................................26

**Rules**

Fed. R. Evid. 704(b) ......................................................... passim

U.S.S.G. § 2B1.1 ............................................................. passim

## PRELIMINARY STATEMENT

Defendant-Appellant Yanjun Xu, by his undersigned counsel, respectfully submits this reply in response to the government's opposition.[1]

This Court should vacate Xu's conviction and remand for a new trial.  First, Xu was charged with and convicted of two conspiracy counts that were impermissibly duplicitous.  This unchecked error prejudiced Xu by allowing the admission of voluminous "bad acts" evidence unrelated to the theft of trade secrets, which should have been precluded as impermissible propensity evidence.  The duplicitous charges also imperiled the unanimity of the jury.  In its opposition, the government belatedly attempts to narrow the scope of the Indictment and largely ignores the evidentiary errors.  Its strategy fails, however, because even if the Indictment was not duplicitous, the challenged evidence could not be deemed intrinsic to the conspiracy and its admission was erroneous.

Second, the District Court abused its discretion by allowing the government's espionage expert, James Olson, to opine on Xu's purported intent to obtain trade secrets in violation of Rule 704(b).  Contrary to the government's argument, Xu unequivocally preserved the Rule 704(b) objection, and Olson's testimony went well beyond simply describing Xu's conduct, causing more than

---

[1] Xu's principal brief is referenced herein as "Br."  The government's opposition brief is referenced as "Opp'n."

harmless error.  Given the government's case with respect to Xu's intent was largely circumstantial, the admission of Olson's testimony warrants vacatur and remand.

Finally, in the alternative, this Court should vacate Xu's sentence as procedurally and substantively unreasonable.  After the filing of Xu's opening brief, the Sixth Circuit ruled that district courts may consider "intended loss" under Section 2B1.1.[2]  But here, the District Court's determination of intended loss as applied to Xu was nevertheless unreasonable.  It failed to make any finding that Xu intended to inflict pecuniary harm on GE and its calculation of lost profits was an exercise in sheer speculation.  The government attempts to defend the enormous intended loss figure by seeking refuge in the oft-cited commentary that a district court "need only make a reasonable estimate of the loss."  But because there is no record evidence to support a finding that Xu intended to cause $50 million of loss to GE, and because the 240-month sentence is substantively unreasonable, Xu's sentence should be vacated.

─────────────────

[2] Xu maintains his position, despite this Court's recent contrary decision in *United States v. You*, 74 F.4th 378, 396 (6th Cir. 2022), that the meaning of "loss" in Section 2B1.1 is not ambiguous and, even if it were, "intended loss" is not a reasonable interpretation and thus deserves no deference.  Br. 46–51.

## ARGUMENT

**I.    The Conspiracy Counts Were Duplicitous and the Corresponding Admission of Evidence Unrelated to the Theft of Trade Secrets Constituted Error**

In his opening brief, Xu established that (1) Counts I and II of the Indictment were duplicitous because each charged multiple conspiracies under the guise of a single count; and that (2) as a result, substantial impermissible propensity evidence was admitted at trial, purportedly as direct evidence of the charged duplicitous conspiracy.  In its opposition, the government recites only the black letter law on duplicity and fails to meaningfully address the corresponding evidentiary errors.

First, the government conclusorily asserts that the Indictment is not duplicitous because each count charged a "single overarching agreement" to "steal aviation-related trade secrets from various non-Chinese companies."  Opp'n 37.  But the actual language of the Indictment did not define the illegal object in this way.  Rather, the Indictment alleged that Xu had a general goal of "obtain[ing] technical information, *including* trade secrets," R.1, Indictment, PageID.1 (emphasis added), broad language which subsumes conduct constituting entirely different crimes, or conduct that is not criminal at all.  Indeed, technical information can be "obtained" in any number of ways—for example, by stealing trade secrets or obtaining export-controlled material, or by engaging in legitimate technology exchanges.  Similarly, the overt acts included transactions from 2013

3

and 2014 relating to technology exchanges and which were not alleged to be connected to the "common goal" of obtaining trade secrets. Although the government claims that these transactions are simply overt acts taken against "different aviation companies," the Indictment does not allege that these expert exchanges had anything to do with aviation companies or any attempt to obtain trade secrets.

In this respect, this case is distinguishable from *United States v. Kelley*, 461 F.3d 817 (6th Cir. 2006), cited by the government, Opp'n 36–38. *Kelley*, 461 F.3d at 830 (a single conspiracy exists if "there is one overall agreement among the various parties to perform different functions in order to carry out the objectives of the conspiracy"). There, the indictment "describe[d] various events" that all tied into "one large scheme" to extort a single individual over many years. *Id.* Here, there is no such singularity of purpose. In a variety of ways, the Indictment broadly defined the conspiracy to include *any* attempt to obtain technical information by *anyone* connected to the MSS stretching back five years. *See* Br. 35. Moreover, although it could have, the government did not charge this as a multi-object conspiracy to commit different crimes – for example a conspiracy to violate export sanctions *and* to steal trade secrets.

As a corollary to the duplicity argument, Xu specifically argued that the District Court's failure to narrow the conspiracy charges led to a series of

prejudicial evidentiary errors, precisely one of the problems of duplicity

anticipated in Xu's motion to dismiss and recognized by this Court. *See United*

*States v. Kakos*, 483 F.3d 441, 443 (6th Cir. 2007) (including among the "adverse

effects" of a duplicitous indictment "prejudice in the shaping of evidentiary

rulings"). As Xu explained in his principal brief, the admission of huge swaths of

bad acts evidence relating to the Safran intrusion, Gau, and Li was erroneous

because that evidence, like some of the alleged overt acts in the Indictment, was

unrelated to any effort to obtain trade secrets and thus constituted impermissible

propensity evidence. *See* Br. 2, 4, 5–7, 18–23, 31–32, 35–38. Xu's opening brief

explained that "*whatever the basis*" for admitting this evidence, the District Court

erred:

- To the extent the challenged evidence was admitted as direct evidence of the conspiracy, that was proper only because both conspiracy charges were impermissibly duplicitous—they included acts designed to obtain "technical information" and/or conduct related to expert exchanges on a range of topics unrelated to trade secrets. Because the admission of that evidence was unfairly prejudicial – consuming days of trial with testimony unrelated to any effort to obtain trade secrets – allowing the government to proceed to trial on duplicitous charges prejudiced Xu and warrants a new trial. Br. 37–38.

- Alternatively, if the conspiracy counts had been defined more narrowly, or this Court finds that the Indictment properly charged a single conspiracy, "the myriad evidence of disparate bad acts—Xu's use of an alias, computer hacking, and interest in information security systems—should have been excluded as improper propensity evidence" and admitted only if the District Court determined that this evidence had satisfied "an enumerated exception in Rule 404(b)(2), did not violate Rule 403, and was subject to standard curative instructions to ensure that the jury considered it only for the limited

permissible purposes." Br. 37 (citing *United States v. Iossifov*, 45 F.4th 899, 918 (6th Cir. 2022)).

Despite pages of Xu's brief being devoted to this topic—and that the evidentiary errors were explicitly referenced in the "issue for appeal"—the government chooses essentially to ignore the argument and mounts no real defense to the central point that the evidence had no connection to trade secrets, or its enormous prejudicial impact at trial. Instead, the government claims that Xu did not specifically challenge the District Court's oral comments (made shortly before openings) in which the Court stated that the evidence was being admitted because it was "intrinsic" to the charged offenses and "speak[s] to the motivation, intent, modus operandi and the like." Opp'n 40 (quoting R.174, Trial Tr. 10/18/2021, PageID.2997). Summarily claiming that "both rulings were correct," the government perplexingly claims that Xu does "not directly challenge either on appeal." *Id.*

The government is wrong. First, to characterize the District Court's comments as rulings independent from its docketed notation order, which Xu did explicitly challenge, goes too far;[3] at best, the District Court's oral statements can

___

[3] The District Court issued the Notation Order on October 14, 2021, and made its oral comments on October 18, 2021, in response to a question from the government, right before trial commenced. R.174, Trial Tr. 10/18/2021, PageID.2997.

6

be understood as an attempted explanation (be it a barebones one) for one aspect of that order.[4]  R.174, Trial Tr. 10/18/2021, PageID.2997.  In any event, the District Court's twin rationale for admitting the evidence – that it constituted both direct evidence of the conspiracy *and* Rule 404(b) bad acts evidence – is precisely what Xu challenged in his opening brief.  Br. 6–7, 31–32, 36–39.

Beyond that, the government's attempts to justify the admission of the evidence fail.[5]  Although the government claims that "Xu and his co-conspirators' attempts to target non-Chinese aviation companies during the relevant time period" were intrinsic to the "alleged [] five-year conspiracy to steal aviation-related trade secrets," Opp'n 40, it conveniently ignores that there was no proof that the Safran, Gau, and Li transactions involved any attempt to steal trade secrets, Br. 18–23, 31–

_____

[4] The District Court's Notation Order encompassed more than Xu's challenges the admission of the Safran, Gau, and Li as improper under Rule 404(b).  It "formally memorialize[d]" the District Court's "intent to issue written decisions" denying Xu's motions *in limine*, to dismiss Counts I and II as unconstitutionally vague and duplicitous, and to exclude co-conspirator statements and for a Rule 104(c) hearing.

[5] The government's assertion that "the district court avoided an 'evidentiary morass' by excluding other evidence that it found fell outside the confines of the conspiracy," Opp'n 40, is without effect.  It cites to one instance in which the District Court excluded a single piece of evidence (a letter) from 2003—10 years before the alleged conspiracy commenced.  R.190, Trial Tr. 10/27/2021, PageID.4156–62.  The District Court's exclusion of this single document far from obviated the prejudicial impact of the District Court's denial of Xu's motion to exclude bad acts evidence.

7

32, 34–37.  Put another way, while those transactions were perhaps intrinsic to the impermissibly duplicitous conspiracy charges that covered a broad swath of time and disparate acts, the evidence was *not* intrinsic to a narrowly defined conspiracy to steal trade secrets.  In essence, the "attempts to target non-Chinese aviation companies" constituted an assortment of disparate "bad acts" propensity evidence that were impermissibly charged as part of single conspiracy count.  The outsized focus at trial on these bad acts illustrates their prejudice:  seven of the government's fourteen witnesses discussed these transactions, and the government's closing recounted this testimony at length.  Br. 37; R.194, Trial Tr. 11/3/2021, PageID.4721–22, 4737–55.

While the District Court referenced some of the "permitted uses" of bad acts evidence ("motivation, intent, modus operandi and the like") in its on-the-record comments, the government does not – and cannot – plausibly suggest that the District Court properly admitted this substantial volume of evidence under Rule 404(b) when it failed to conduct even a rote Rule 403 balancing analysis or instruct the jury of the limited purposes for which the evidence could be admitted.  Br. 37; *see Iossifov*, 45 F.4th at 918 (describing the "three-part framework for evaluating [the] exception" to Rule 404, pursuant to which "courts must determine whether there [is] sufficient evidence that the 'other acts' took place," they "are admissible for a proper purpose under Rule 404(b)," and the "evidence is more prejudicial

than probative" (citations and internal quotation marks omitted)).  As a result, the

government was allowed to tout, and the jury rely upon, reams of bad act evidence

that should have been excluded.  Xu was prejudiced and vacatur is warranted.[6]

Finally, the prejudice from duplicity was not limited to the erroneous

admission of propensity evidence.  Because the jury was presented with evidence

relating to separate conspiracies devoid of any connection to trade secrets –

computer hacking and meetings with an engineer and an IT professional – the

Court cannot be confident that the jury's verdict was unanimous.  The government

argues that the jury was not required to reach unanimity as to the overt acts, and

thus it is irrelevant whether some jurors convicted based on the conduct related to

the Safran hacking, while others might have relied on the GE Aviation-related

conduct.  Opp'n 40–41.  While that is an accurate statement of the law, what the

government terms "overt acts" was actually evidence of separate bad acts or

different conspiracies.  Accordingly, it is unclear whether the jury unanimously

convicted on the same, single conspiracy, thereby violating Mr. Xu's Sixth

Amendment rights and providing a further basis for reversal.  *See Kakos*, 483 F.3d

at 443.

------

[6] Alternatively, this Court should remand to the District Court to explain its rationale for denying Xu's motions.  Br. 38–39 (citing *Easley v. Univ. of Mich. Bd. of Regents*, 853 F.2d 1351, 1352 (6th Cir. 1988); *Pure Oil Co. v. Superior Oil & Tire Co.*, 317 F.2d 333 (6th Cir. 1963)).

## II.    Xu Preserved His Rule 704(b) Objection to Olson's Testimony and the District Court's Admission of the Evidence Warrants Reversal

Contrary to the government's new claim that Xu did not timely object to Olson's testimony, Xu properly preserved his Rule 704(b) objection.  Accordingly, the abuse of discretion standard, not plain error, applies.  The District Court clearly abused its discretion in permitting Olson to testify as to Xu's mental state, and that testimony prejudiced Xu, amounting to more than harmless error.  Vacatur is warranted.

### A. The Abuse of Discretion Standard Governs This Court's Review of the District Court's Decisions Regarding Olson's Testimony

 Relying on inapposite and out-of-Circuit cases, the government mistakenly argues that plain error review applies because Xu "did not contemporaneously object (or move to strike)," even though, as the government concedes, Xu objected during Olson's testimony and moved to strike the following business day.  Opp'n 43–44; *see also* R.192, Trial Tr. 10/29/2021, PageID.4650; R.166, Motion to Strike, PageID.2367–72.  The government's attempt to re-cast the standard of review fails.[7]

---

[7] It is also surprising that the government raises this contention on appeal, given its position in the District Court.  In response to Xu's motion to strike, the government filed a brief requesting that the District Court deny Xu's motion.

Plain error review applies only "when a party *fails* to object to evidence at the trial court[.]" *United States v. Collins*, 799 F.3d 554, 576 (6th Cir. 2015) (emphasis added) (citation and internal quotation marks omitted).  Where, as here, an issue is preserved at trial, a district court's evidentiary ruling is reviewed for abuse of discretion.  *United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013). "To preserve an issue for appellate review, a litigant must 'state the issue with sufficient clarity to give the court and opposing parties notice that it is asserting the issue' and provide 'some minimal level of argumentation in support of it' before the district court." *Stryker Emp't Co., LLC v. Abbas*, 60 F.4th 372, 383 (6th Cir. 2023) (quoting *United States v. Huntington Nat'l Bank*, 574 F.3d 329, 332 (6th Cir. 2009)).

Xu unequivocally satisfies the preservation requirement.  At sidebar – in the middle of Olson's direct testimony – Xu's counsel objected on the same grounds raised in this appeal, explaining that Olson's "testimony is really getting into the province of the jury where he looks at some language that's in evidence and makes

───────────────────

Nowhere in that brief did the government argue that Xu failed to object adequately to Olson's testimony or that Xu's motion was untimely.  *See* R. 168, Gov.'s Response to Def.'s Motion to Strike, PageID.2574–79.  In fact, in that brief, the government conceded that Xu "raised [the Rule 704(b)] objection during Mr. Olson's testimony."  *Id.* at PageID.2578.

11

an opinion about what this – what our defendant is doing ... .  That's really a fact for the jury to determine.  So I think it's excludable under 704(b), Your Honor."  R.192, Trial Tr. 10/29/2021, PageID.4650.  The following business day, Xu filed a motion to strike the specific portions of Olson's testimony that violated Rule 704(b), R.166, Motion to Strike, PageID.2367–72, the very same portions that Xu now objects to on appeal.[8]

In contrast, in none of the cases cited by the government did the defendant raise the evidentiary objection at issue on appeal during that witness's testimony.  *See United States v. You*, 74 F.4th 378, 388 (6th Cir. 2023) ("You objected to [the expert's] testimony under Rule 403, but not under Rule 704(b)."); *United States v. Pettigrew*, 77 F.3d 1500, 1516 (5th Cir. 1996) (explaining "there was no [Rule 704(b)] objection to any of these statements by [the expert] at the time that they were made"); *United States v. Spriggs*, 102 F.3d 1245, 1257 (D.D.C. 1996) (finding defendants failed to preserve hearsay objections by neglecting to "lodge[] contemporaneous objections" and waiting to raise the issue until a sidebar called by the government during cross-examination).  As to the sufficiency of Xu's

---

[8] Although the government complains Xu filed the motion to strike three days after Olson's testimony, the lag was a function of the calendar—Olson testified on a Friday and the following business day, a Monday (three calendar days later), Xu filed his motion.

motion to strike, the two cases the government cites, Opp'n 44, involved motions to strike where, unlike here, there had been *no* objection at the time of the testimony. *Pettigrew*, 77 F.3d at 1516 n.14; *Spriggs*, 102 F.3d at 1257. Here, Xu objected to Olson's testimony in the middle of direct, and then moved to strike the testimony on the following business day.[9] Accordingly, Xu unequivocally preserved his Rule 704(b) objection, and the abuse of discretion standard applies.

B. The District Court Abused Its Discretion by Admitting Olson's Testimony, Causing More Than Harmless Error to Xu

Pursuant to Rule 704(b), "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid. 704(b). As to trade secret theft and economic espionage, respectively, Rule 704(b) therefore prohibits an expert from opining on whether an individual "knowingly" attempts or conspires to obtain a trade secret with "intent" to convert it, 18 U.S.C. § 1832(a), or "knowingly" attempts or conspires to steal a trade secret "intending or knowing that the offense will benefit any foreign government, foreign instrumentality, or foreign agent," 18 U.S.C. § 1831(a).

---

[9] In addition to his Rule 704(b) objections, Xu also objected to Olson's testimony as lacking foundation or speculative on at least four occasions. R.192, Trial Tr. 10/29/2021, PageID.4640, 4642, 4643, 4645.

Yet Olson did precisely that. Specifically, Olson defined espionage as "stealing secrets" and "industrial espionage" as "stealing another country's industrial secrets, its trade secrets, proprietary information[.]"  R.192, Trial Tr. 10/29/2021, PageID.4609.  Against this backdrop, Olson then testified that an email Xu sent, which included an attachment referencing foreign countries' structural materials for composite fan blades, meant "that [Xu's] objective was to obtain this technology from foreign countries." *Id.* at PageID.4643.  Separately, Olson also testified as to what Xu "want[ed]," and what he was "think[ing]" with respect to his interactions with potential "agent[s]." *Id.* at PageID.4643, 4652 ("I see here a case officer, in my opinion, from China who is increasingly aggressive, pushing for the additional stuff, to bring the computer.  I think that he's very encouraged by how this is going.  He has a – an agent, potential agent who he thinks is going to be very compliant.").  Finally, Olson concluded that based on the specific evidence in this case, "the conversations and the actions of [Xu] are those of an intelligence officer conducting espionage," *i.e.*, which he had previously defined as "stealing another country's … trade secrets." *Id.* at PageID.4609, 4667.

The government's attempts to characterize Olson's testimony as purely descriptive of Xu's words and actions are unavailing.  Opp'n 47–50.  First, the government claims that Olson's testimony regarding Xu's "objective" does not violate Rule 704(b) because "Olson was simply restating Xu's own words" in the

email and because "Xu's intent to obtain technology from abroad was not at issue in this case." Opp'n 47–48. But Olson was not "simply restating" the email. The actual email contained no reference to Xu's intent. Rather, it stated that it was "attach[ing a] file" with "some domestic requirements," and which included reference to "the current development situation and future development direction of foreign countries' structural materials" for composite fan blades. A-734–37. When Olson testified that in sending this email Xu's objective – or intent – was to obtain the very technology that the government claimed was a trade secret (technology related to fan blades), Olson impermissibly invaded the province of the jury. R.192, Trial Tr. 10/29/2021, PageID.4643.

The government's alternative argument that the testimony did not matter because "Xu's intent to obtain technology from abroad was not at issue in this case," is directly at odds with the precise language of the Indictment, which alleged that "[o]ne of Xu's job duties on behalf of MSS is to obtain technical information, including trade secrets," and charged Xu with, among other things, pursuing GE Aviation's technology, as well as the 2013 and 2014 overt acts relating to technology transfers. R.1, Indictment, PageID.1, 5–14. Indeed the government cannot have it both ways: it cannot craft its broad conspiracy charge against Xu around a series of disparate acts to obtain aviation technology and thereby admit broad swaths of evidence relating to efforts to obtain "aviation-related technology"

15

as supposedly intrinsic to the charged conspiracy and simultaneously claim, for purposes of defending Olson's testimony, that "Xu's intent to obtain technology from abroad" was somehow "not at issue." Olson's testimony plainly violated Rule 704(b).

The government also argues that Olson's testimony regarding what Xu was "think[ing]" and "want[ed]" does not violate Rule 704(b) because Olson was merely describing Xu's actions and, in any event, did not relate to an "element of the crime." Opp'n 48–49. This framing is overly formalistic. In describing Xu's conduct, Olson opined about Xu's motivations for that conduct. In interpreting one of Xu's emails, Olson explained that Xu was "*pushing* for additional cooperation," and "*wants* to see how the target will respond to that request." R.192, Trial Tr. 10/29/2021, PageID.4643 (emphasis added). Later in his testimony, Olson explains that in communications with Zheng about bringing his computer to Europe, Xu is "very encouraged by how this is going" and has a "potential agent who he *thinks* is going to be very compliant." *Id.* at PageID.4652 (emphasis added). By describing Xu as "pushing" and "pressing" for information from a "target," Olson indisputably described Xu's purpose or intent, specifically that he was engaging with a "target" so that he could obtain trade secret information. In this respect, Olson's testimony bore directly on the requisite state of mind necessary for both trade secret theft and economic espionage. *See* 18

U.S.C. §§ 1831–1832.  It does not matter that Olson did not track the statutory language or use words like "intent" or "knowledge."  *See, e.g.*, *United States v. Warshak*, 631 F.3d 266, 324 (6th Cir. 2010).  His testimony violated Rule 704(b) because, by opining on Xu's motivation or purpose vis-à-vis a possible foreign "agent" or "target," Olson ascribed to Xu the motivations of a spy, bearing directly on Xu's purported intent to obtain trade secrets for the benefit of a foreign entity. *See United States v. Harris*, 393 F. App'x 314, 319 (6th Cir. 2010) (finding expert's testimony that he "believe[d] the guns were used to protect drugs and their proceeds" violated Rule 704(b)); *United States v. Miner*, 774 F.3d 336, 350 (6th Cir. 2014) (finding expert's testimony regarding "[t]he motivation behind [defendant's] conduct was directly probative of the *mens rea* requirement").

Finally, the government tries to skirt the significance of Olson's testimony that the "actions of [Xu] are those of an intelligence officer conducting espionage," R.192, Trial Tr. 10/29/2021, PageID.4667, by suggesting that "[w]hile it is true that people engaged in tradecraft often intend to steal secrets or acquire them without authorization," an individual engaged in such conduct "could, in theory, do so without the intent to steal trade secrets," Opp'n 50.  While possible, and in fact borne out by the reams of prejudicial evidence admitted by the District Court that was unrelated to any efforts to steal trade secrets, that is not what Olson said. Because Olson defined espionage as "stealing secrets" and economic espionage as

"stealing another country's industrial secrets, *its trade secrets*, proprietary information," by opining that Xu's actions were "those of an intelligence officer conducting espionage," Olson was assigning to those conversations and actions the intent to steal trade secrets.  R.192, Trial Tr. 10/29/2021, PageID.4667 (emphasis added).  In short, Olson repeatedly opined that Xu intended to steal trade secrets, an element of the charged offenses, in violation of Rule 704(b).

Olson's improperly admitted testimony was highly damaging to Xu.  Despite the government's laundry list of incriminating evidence supposedly illustrating Xu's intent, the government's case as to Xu's state of mind was largely circumstantial.  Opp'n 52–53.  Olson's opinion that Xu operated specifically with the intent to steal proprietary information was a keystone of the government's case at trial.  Olson was the government's final witness and the final witness at trial. Additionally, the government referenced Olson repeatedly in its closing, discussing portions of the challenged testimony as well as the email that Olson opined demonstrated that Xu's "objective was to obtain technology from foreign countries."  R.194, Trial Tr. 11/3/2021, PageID.4763; R.192, Trial Tr. 10/29/2021, PageID.4643.  The District Court's admission into evidence of Olson's improper testimony, and its denial of Xu's motion to strike, therefore, constituted more than harmless error.

18

Finally, the jury instructions were insufficient to cure the error because they failed to "provide[] a reasonably straightforward rationale for why [Olson's] testimony had been admitted and for what reasons it could be permissibly considered." *Kendel v. Local 17-A United Food & Commercial Workers*, 512 F. App'x 472, 481 (6th Cir. 2013). The government points to *United States v. Shaffer*, 781 F. App'x 404 (6th Cir. 2019), an unpublished decision in which this Court found that the pattern instruction regarding how to consider expert testimony was sufficient. But, unlike here, the expert witness in *Shaffer* did not affirmatively state what he believed to be in the defendant's mind. *Id.* at 412 (finding expert only "arguably crossed the line of permissibility" by testifying that "based on the guns' proximity to the drugs seized during the home search, he did not believe the firearms found in Shaffer's home were 'for an innocent purpose'"). By contrast, Olson repeatedly made affirmative statements about Xu's "objective," what he was "think[ing]" and what he "want[ed]."[10]  In these circumstances, an instruction

---

[10] The government complains that both below and on appeal, Xu "cherry-picks five of Olson's answers" to argue that the testimony violated Rule 704(b) and cites to portions of Olson's testimony in which he states "consistent with what [he] believe[s] an intelligence service" would receive from technical experts. Opp'n 46, 48 (quoting R. 192, Trial Tr. 10/29/2021, PageID.4644). But the fact that Olson may have stayed within bounds during some of his testimony does not cure the significant prejudice created by those portions of his testimony which did not. The government does not, because it cannot, cite any support for its implied position that the Court may find a violation of Rule 704(b) only where the entirety of an expert's testimony violates the Rule.

cannot cure the prejudice, especially when it does not specifically detail what the jury can or cannot consider. *Cf. Kendel*, 512 F. App'x at 481.

## III. The District Court Imposed a Procedurally and Substantively Unreasonable Sentence on Xu

As set out in Xu's opening brief, the District Court's 240-month sentence for Xu was both procedurally and substantively unreasonable. First, the District Court's methodology and actual calculation of Xu's intended loss was unreasonable and thus necessitates vacatur and remand. Second, the excessive length of Xu's sentence was substantively unreasonable and provides an additional basis for vacatur and remand for re-sentencing.

### A. The District Court's Intended Loss Calculation Was Unreasonable

This Court's recent decision in *United States v. You*, 74 F.4th 378 (6th Cir. 2023), issued after Xu's opening brief was filed, admittedly forecloses Xu's argument that the Guidelines commentary interpreting "loss" in Section 2B1.1 to include "intended loss" deserves no deference and that the District Court erred by relying on it. *See id.* at 396–98. Nonetheless, for the reasons stated in the opening brief and articulated by courts throughout the country, including within this Circuit, Xu maintains that *You* was wrongly decided, that "loss" in Section 2B1.1 is not ambiguous and, even if it were, "intended loss" is not a reasonable interpretation of "loss." Br. 46–51. *See also United States v. Kennert*, No. 22-1998, 2023 WL 4977456, at *4–6 (6th Cir. Aug. 3, 2023) (Murphy, J., concurring);

*United States v. Smith*, 79 F.4th 790, 799–800 (6th Cir. Aug. 23, 2023)

(Nalbandian, J., concurring); *United States v. Banks*, 55 F.4th 246, 258 (3d Cir.

2022); *United States v. Patel*, Case No. 19-CR-80181-RAR, 2023 WL 5453747, at

*2–3 (S.D. Fla. Aug. 23, 2023); *United States v. Alford*, No. 3:21-cr-00052-MCR,

2022 WL 3577373, at *3 (N.D. Fla. Aug. 20, 2022); *United States v. Wheeler*, No.

5:22-CR-38-FL-1, 2023 WL 4408939, at *2–3 (E.D.N.C. July 6, 2023).

Even if a court may consider intended loss for purposes of calculating the

guidelines under Section 2B1.1, here, Xu's sentence must be vacated because the

District Court's calculation of intended loss was unreasonable.  First, the District

Court did not make any finding as to "whether [Xu] *intended* (had the purpose) to

cause the losses in question."  *United States v. Manatau*, 647 F.3d 1048, 1056

(10th Cir. 2011).  *See* Br. 53–54.  This is a necessary analytical step in calculating

loss because "intended loss" does not encompass "a loss that the defendant merely

*knew* would result from his scheme or a loss he might have *possibly and*

*potentially* contemplated."  *Manatau*, 647 F.3d at 1050; *see also United States v.*

*Yu Xue*, Crim. Action No. 16-22, 2020 WL 5645765, at *15 (E.D. Pa. Sept. 22,

2020) ("[T]o establish a *prima facie* case of intended loss, the Government must

show that a defendant had the requisite subjective intent.").  The government does

not point to anything in the record where the District Court specifically defined

what it believed to be the scope of Xu's intended harm.  Instead, the government

21

attempts to fashion an *ex post facto* justification for the District Court by asserting

that Xu was "a loyal member" of the MSS, "the Chinese government has

prioritized developing its domestic aviation industry," and "the Chinese

government uses the MSS to advance this goal via industrial espionage and the

illicit transfer of technology from foreign companies." Opp'n 56–57. None of this

evidence, however, speaks to whether *Xu* specifically intended to cause GE to lose

profits, as opposed to, at best, knowing that such a loss might result from his

actions. *Manatau*, 647 F.3d at 1050.

Especially given that the term "intended loss" does not appear in the

Guideline itself, it should be used to enhance a defendant's offense level only

when the intent of the defendant with respect to that loss is clearly established.

Here, there was no evidence that Xu intended GE to suffer *any* lost profits at all.

Although the government suggests that the District Court must assign to Xu a non-

zero loss amount because his convictions involve trade secrets with "independent

economic value," Opp'n 57, "the Guidelines do not require a loss calculation

greater than zero," *United States v. Yihao Pu*, 814 F.3d 818, 828 (7th Cir. 2016);

*United States v. Free*, 839 F.3d 308, 323 (3d Cir. 2016) (same), and courts have

found a loss amount of zero in trade secret cases where a specific number—actual

or intended—cannot be reasonably calculated, *see Yu Xue*, 2020 WL 5645765, at

*14–20; *United States v. Isler*, 983 F.3d 335, 340–42 (8th Cir. 2020). Absent a

22

specific finding as to Xu's state of mind with respect to intended loss—*i.e.*, that he intended that GE lose profits—this Court cannot bless any calculation of intended loss that the District Court computed.

Second, the District Court's calculation of a *$50 million* intended loss was not reasonable. In the opening brief, Xu pointed out that the District Court had essentially done a "back-of-the-napkin" calculation using industry publications and GE's 2019 financial statements to determine what portion of GE's 2019 profits relating to commercial aircraft engines it would have lost had Xu obtained its trade secrets. Br. 54–56. Although a sentencing court may in appropriate circumstances use lost profits as a basis for calculating intended loss, here the District Court's calculation was rife with speculative assumptions and lacked support in the record. Accordingly, its methodology was not reasonable and was clearly erroneous.[11] The government argues that the speculative nature of the District Court's calculation is irrelevant because Section 2B1.1 allows a court's calculation to include "pecuniary harm that Xu intended to cause" that was "impossible or unlikely to occur." Opp'n 59–60. That commentary, however, does not permit a

---

[11] The government notes that *You* cited with approval the District Court's decision calculating Xu's intended loss amount. Opp'n 57. However, *You* approved only the process of "multiplying revenues by the profit margin" without analyzing whether that methodology was appropriate as to Xu and without evaluating whether the District Court applied the methodology properly given the record before it. *See You*, 74 F.4th at 398–90.

court to generate an intended loss amount out of whole cloth.  It must be grounded in a fact-based determination of the scope of defendant's "intended pecuniary harm," U.S.S.G. § 2B1.1 cmt. n.3(A)(ii), and it must be a reasonable assessment of that intent.  Thus, although the District Court calculated an intended loss of 1% of one year of GE Aviation's profits, even that number was too speculative because it was not connected to Xu's intent.

Indeed, this Court has imposed limits on the "impossible or unlikely to occur" phrase, noting that "there is surely some point at which a perpetrator's misperception of the facts may become so irrational that the words 'intended loss' can no longer reasonably apply," *United States v. McBride*, 362 F.3d 360, 374 (6th Cir. 2004).  Thus, even if the District Court found, as the government suggests, that Xu "intended for China to establish global dominance in the industry (such that a 100% market share capture would be appropriate)," Opp'n 57–58, Sixth Circuit case law precludes endorsing such a fantastical intent.  Where the intended loss calculation "is so high that it is not rooted in reality," *United States v. Murphy*, 815 F. App'x 918, 922 (6th Cir. 2020),  or "where a defendant devises an ambitious scheme obviously doomed to fail and which causes little or no actual loss," this Court has vacated the sentence because "it may be unfair to sentence based on the intended (but highly improbable) loss determination." *McBride*, 362 F.3d at 375

(citation and internal quotation marks omitted); *see also United States v. Fleming*, 128 F.3d 285, 288 (6th Cir. 1997) (collecting cases).

In an effort to defend the District Court's methodology, the government argues that "trade secret loss calculations are inherently difficult" and that "some level of estimation" is permitted.   Opp'n 62.  Even so, here the District Court allowed for too much "estimation."  Given the myriad technical and economic assumptions built into the District Court's calculation, even the notion that Xu's conduct would lead China to "capture no more than 1% of GE Aviation's *global* business" was not rooted in reality and cannot be upheld on appeal.[12]

The speculative nature of the District Court's calculation was compounded by the fact that it relied upon financial documents that were not cited by either party nor introduced at trial or the sentencing hearing.  The government dismisses these concerns by arguing that Xu does not contest those documents' veracity and because the "relevant 2019 revenue and profit data" were included in materials the government submitted after the loss hearing.  Opp'n 58–59 & n.7.  Xu did,

---

[12] As outlined in Xu's opening brief, these assumptions include that: GE Aviation would maintain its monopoly; China could and would produce a competitive product by 2019; profits from all commercial GE Aviation engines and their service contracts is an appropriate baseline (even though Xu's conduct was limited to the fan module component of one engine type); and GE Aviation's company-wide profits accurately represent profit margins for the at-issue technology.  Br. 55–56.

however, challenge the government's estimation of lost profits before the District Court.  R.207, Def.'s Reply to Gov.'s Mem. Regarding Loss, PageID.5216–17. Moreover, not only were the 2019 numbers only embedded within an exhibit containing GE Aviation's 2021 financial report, R.206-6, Attachment 6 to Gov.'s Mem. Regarding Loss, PageID.5191, the fact that the 2019 data on which the District Court relied for the alternative theory of loss it ultimately endorsed was not tested in a full adversarial hearing further underscores the speculative and unreasonable nature of the intended loss calculation.

For these reasons, Xu's sentence must be vacated and remanded for the District Court to recalculate the loss amount applicable under Section 2B1.1.

B. The Sentence Was Substantively Unreasonable

Xu's 240-month sentence for offenses resulting in no actual loss to any entity or person is also substantively unreasonable in that it gave undue weight to deterrence, without at all considering "the need to avoid unwarranted sentence disparities."  18 U.S.C. § 3553(a)(6).  While the government goes to great lengths to defend the length of the sentence, as well as the shorter sentences imposed on similar defendants elsewhere, nowhere does the government point to where the District Court explicitly considered the possibility that a 20-year sentence would create an unwarranted sentencing disparity.  Indeed, the 120-month sentence for Xu's trade secret thefts, in particular, was unreasonable because it outstripped by

multiples other trade secret theft sentences, including for individuals charged with economic espionage.  Br. 56–57.

## **CONCLUSION**

This Court should vacate Xu's convictions and remand for a new trial because the District Court erred in denying Xu's motion to dismiss the Indictment and abused its discretion by admitting expert testimony in violation of Rule 704(b). Even if this Court does not vacate Xu's convictions, it should vacate his sentence and remand for re-sentencing.

Dated:  October 23, 2023
       New York, New York

Respectfully submitted,

SHER TREMONTE LLP

By: */s/  Justine A. Harris*
    Justine A. Harris
    Katie Renzler

*Attorneys for Yanjun Xu*

## <u>CERTIFICATE OF COMPLIANCE</u>

This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,438 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f).

This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface in 14-point Times New Roman font.

Dated:  October 23, 2023

$\underline{\hspace{1cm} \textit{/s/  Justine A. Harris} \hspace{1cm}}$
Justine A. Harris

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and accurate copy of the foregoing was filed electronically on October 23, 2023, using the Court's CM/ECF system, which will serve notice of this filing on all counsel of record.

<u>     /s/ Justine A. Harris     </u><br>
Justine A. Harris